UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                     **MEMORANDUM & ORDER**

-against-                                           97-CR-877-02 (DRH)

ROSIE BAKER,
              Defendant.
------------------------------------------------------------X

**APPEARANCES:**

**For the Government:**
    Jacquelyn M. Kasulis
    Acting United States Attorney
    Eastern District of New York
    100 Federal Plaza
    Central Islip, New York 11722
    By:   Charles N. Rose, A.U.S.A.

**For Defendant:**
    Davis Polk & Wardwell, LLP
    450 Lexington Avenue
    New York, New York, 10017
    By:   Jason Sugarman, Esq.

**HURLEY, Senior District Judge:**

The purpose of this Memorandum is to address the June 21, 2021 motion of defendant Rosie Baker ("Defendant" or "Baker") for a reduction in sentence, otherwise known as a motion for compassionate release,[1] pursuant to 18 U.S.C.

---

[1] Baker's motion uses the terminology "compassionate release." However, as noted by Judge Haight in *United States v. Shakur*, 498 F. Supp. 3d 490, 492 (S.D.N.Y. 2020), that term is not one contained in the First Step Act of 2018; rather it is one coined by the courts to characterize a reduction in sentence pursuant to that Act. *See also United States Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (stating that the term "compassionate release is a misnomer" as the First Step Act "in fact speaks of sentence reductions").

3582(c)(1)(A)(i). (*See* DE 340 at 1.) For the reasons set forth below, the motion is denied.

## BACKGROUND

I. **Conduct Underlying the Counts of Conviction**

The following key facts come mainly from a summary provided in the Second Circuit's decision in *United States v. Baker*, 262 F.3d 124 (2d Cir. 2001).

The evidence at trial demonstrated that Defendant, together with her son Vance Baker, killed Dr. Daniel Hodge in connection with a long-running Medicaid fraud scheme. Defendant was the director of Long Life Home Health Care ("Long Life"), a nonprofit Medicaid services provider in Brooklyn, New York, which provided home health care aides for Medicaid patients under a program administered by the New York City Human Resources Administration. Baker, with the assistance of her son, devised a scheme to defraud the government by diverting funds from Long Life's budget via kickbacks for certain medical procedures and self-dealing rental and services contracts between Long Life and several entities owned by Baker. Between 1988 and 1996, Defendant appropriated almost $2,000,000.00 from Long Life for her personal benefit. Further, she expended significant efforts to cover up her extensive fraud by, inter alia, creating shell corporations, laundering the scheme's proceeds by the structuring of cash deposits and destroying incriminating documents in the face of a grand jury investigation.

Dr. Hodge was also involved in Defendant's and Vance Bakers' Medicaid fraud scheme. He provided medical services to Long Life employees and paid

kickbacks to Defendant. Dr. Hodge and Defendant became romantically involved, and even lived together for a period. However, after Dr. Hodge identified Vance Baker to the police for an unrelated crime of attempted murder and attempted assault, the relationship between Dr. Hodge and Defendant fell apart. Baker began to exclude Dr. Hodge from Long Life and even threatened to kill him. Dr. Hodge demanded that Baker pay him money allegedly owed to him in connection with the Long Life Medicaid scheme. Dr. Hodge eventually filed suit in New York State court to collect these funds. Dr. Hodge also threatened to go to law enforcement authorities with evidence of the Long Life Medicaid fraud.

In May 1997, Baker asked Michael Davis—her former boyfriend and sometime-participant in the Long Life scheme—to kill Dr. Hodge. Mr. Davis declined, at which point Baker told him that she would get her son to arrange for the killing. Baker gave her son money to hire a contract killer to murder the doctor. But instead of hiring someone, Defendant's son murdered the doctor.

On June 26, 1997, Baker's son and an accomplice waited for the doctor at his residence. Upon the doctor's return and while he was still in his car, the son killed the doctor execution style by two gunshot wounds to his upper back, fired from a revolver at point-blank range. The son then took the doctor's briefcase containing a laptop and then left with his accomplice. At trial, the government presented evidence that Vance Baker stated in a telephone conversation that a computer on which Dr. Hodge claimed to have saved incriminating evidence about Long Life had been destroyed. Baker and her son then attempted to destroy the murder weapon.

They disposed of the spent shell casings and gave the revolver to Baker's husband who concealed the gun in a suitcase and destroyed it, together with incriminating documents, in an incinerator. Vance Baker was also overheard asking his father on the telephone whether he had gotten rid of the revolver and the shells. Furthermore, Mr. Davis testified that in late June or early July of that year, Defendant told him that she had arranged for her son to recruit someone to kill Dr. Hodge since he, Mr. Davis, had declined to do so, but that her son had done it himself, making it look like a robbery.

On July 29, 1998, following a two-week jury trial before the Honorable Jacob M. Mishler, Defendant was convicted of conspiracy to commit murder with intent to obstruct justice (Count One), murder with intent to obstruct justice (Count Two), conspiracy to use a firearm during and in relation to a crime of violence (Count Three), and use of a firearm during and in relation to a crime of violence (Count Four). After the trial, the defendant also pleaded guilty to conspiring to defraud the United States by filing false Medicaid claims.

## II. Sentencings and Appeal

On February 14, 2000, Defendant was sentenced by Judge Mishler primarily to life imprisonment and ordered to pay restitution in the amount of $1,926,576. According to documents submitted by Defendant, she was "60 years old at the beginning of her criminal involvement and 63 years old at the time of sentencing on February 14, 2000." (DE 340-6 at p. 13.)

In 2002, the Second Circuit remanded the case for resentencing after

determining that the conviction on Count Two was flawed for relying on a jury charge for a lesser included offense of use of physical force to obstruct justice. At resentencing, the defendant was sentenced by the undersigned to a term of 45 years' imprisonment.[2] According to the government, defendant is presently scheduled to be released in January 2037.

### III. The 2013 Request for Compassionate Release

In 2013, Baker, at the time 74 years old, filed her first request for compassionate release alleging she suffered from a debilitating medical condition, specifically "coronary artery disease, diabetes melliltus type II, chronic kidney disease, anemia, severe hypertension, glaucoma, cataracts and chronic heart failure." (DE 340-6.) Her request was denied by the Bureau of Prisons as follows:

> Utilizing program Statement 5050.49, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. 3582(c)(1)(A) and 4205(g), dated August 12, 2013, medical staff have determined that you do not meet the criteria under Debilitated Medical Condition. You are not suffering from an incurable disease, progressive illness from which you will not recover that leaves you completely disabled, meaning you cannot carry on any self-care and are totally confined to a bed or chair more than 50% of waking hours. Furthermore, while you may meet the geriatric medical criteria for RIS consideration, your request is denied because the nature of your crime includes violence/murder and despite your illness you remain physically capable of reoffending and placing the community at significant risk. For public safety reasons your request is denied at this time.

---

[2] Specifically, the Court sentenced Defendant to five (5) years imprisonment on Count One of S-2; ten (10) years imprisonment on Count Two of S-2; twenty (20) years imprisonment on Count Three of S-2; five (5) years imprisonment on Count four of S-2; and five (5) years imprisonment on Count One of S-3. All counts to run consecutively, for a total of forty-five (45) years imprisonment to be followed by three (3) years of supervised release on each count to run concurrently.

(*Id.*)

**IV. The 2020 Motion for Compassionate Release**

On February 21, 2020, while incarcerated at FMC Carswell, a federal medical center run by the Federal Bureau of Prisons ("BOP") located in Fort Worth, Texas, 2020, Baker filed a request for compassionate release with the Warden of FMC Carswell. (S*ee* DE 340-6 at 14-16.) In support thereof, she asserted that her age, health and purported fatal risks of COVID-19 were extraordinary and compelling reasons warranting compassionate release. Her request was denied by the Warden by letter dated March 16, 2020 and she then filed a motion with the Court seeking compassionate release. By Memorandum and Order dated April 21, 2020, the motion was denied as the Court found that Baker had not demonstrated an "extraordinary and compelling" reason justifying compassionate release and that, in any event, the goals of sentencing would not be served by granting the application. (*See* DE 346.)

Baker moved for reconsideration of the denial. In a reply dated August 14, 2020, new facts were presented relating to Baker's "mental health appearing to have seriously declined." (DE 359 at 5.) Denying reconsideration, the Court, inter alia, reiterated that a reduction in her sentence would undermine its deterrent effect:

> As the government aptly notes: "In addition to the heinous nature of the crimes, granting the defendant a seventeen year reduction in her sentence would completely undermine the deterrent effect of such a lengthy sentence. After the Second Circuit remanded the case for resentencing, the district court – no longer bound by the statutory minimum sentence of life

> imprisonment on Count Two – still determined that a sentence of 45 years was appropriate and reasonable despite the knowledge that then-sexagenarian defendant would be incarcerated effectively for the rest of her life." . . . [T]he Court . . . does not believe that any of the goals of sentencing would be served by granting her the requested relief.

DE 365 (quoting April 21, 2020 Memorandum & Order at 8, which in turn quoted the government's opposition (DE 343 at 6).)

## V.     The Current Application

On February 12, 2021. Baker filed a renewed request for a reduction in sentence ("RIS") with the Warden at FMC Carswell. Apparently, such requests are vetted by a number of individuals. In this case, the Warden at Carswell recommended that it be granted. Additionally, the Medical Director of the BOP found that Baker met the criteria for elderly inmates with "medical RIS category" due to her cognitive decline and "is experiencing age-related deteriorating cognitive dysfunction that substantially diminishes her ability to function in a correctional environment." However, the Acting Assistant Director of the Correctional Programs Division recommended that the request be denied, on the grounds that (1) many of her medical conditions were noted in the Presentence Investigation Report resulting in her initial designation to a Federal Medical Center; (2) "[i]nformation received from the Medical Director indicates inmate Baker is independent with the Activities of Daily Living and Instrumental Activities of Daily Living, although she requires regular cuing and redirections to complete these tasks; and (3) the opinion that release would minimize the severity of the offense."

On May 12, 2021, Baker received a letter from the Acting Assistant Director

of the BOP informing her that her request was denied "in light of the nature and circumstances of [defendant's] offense, her release at this time would minimize the severity of her offense and pose a danger to the community." An application, pursuant to 18 U.S.C. § 3553(a), to the Court followed the BOP's denial.

In support of the current application, it is asserted, and the government does not dispute, that extraordinary and compelling reasons exist due to Defendant's diminished mental capacity which has resulted in a diagnosis of moderate to severe dementia.[3] The present dispute, as framed by the parties is whether the sentencing factors set forth in 18 U.S.C. § 3553 support the relief requested.

## DISCUSSION

**I.     Applicable Law**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), the basis for the current application, provides:

> The court may not modify a term of imprisonment once it has been imposed except that - -
>
> (1) in any case - -
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in 3553(a) to the extent that they are applicable, if it finds that - -

---

[3] The government also does not dispute that Defendant has satisfied the exhaustion requirement.

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community under section 3142(g);
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582 (c)(1)(A).

In *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020), the Second Circuit held that courts are not constrained by the narrow grounds for granting compassionate release set forth United States Sentencing guidelines § 1B1.13, the applicable guidelines section for sentencing reductions setting forth guidance on what constitutes "extraordinary and compelling circumstances." However, even after *Brooker,* the mandate in § 3582(c)(1)(A)(i) remains, requiring a court contemplating a sentence reduction to consider the sentencing factors at 18 U.S.C. § 3553(a) to the extent they are applicable and determine whether they support granting the relief requested.

## II.   The Application is Denied.

The Court begins its analysis with whether Baker has demonstrated "extraordinary and compelling circumstance" and, like the parties, concludes that she has done so. The medical evidence submitted confirms that Defendant's cognitive functioning has declined resulting in a diagnosis of dementia of the

Alzhemier's type. The question thus becomes whether the sentencing factors in 18 U.S.C. § 3553(a) support her release.

The factors to be considered pursuant to 18 U.S.C. § 3553(a) include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the need for the sentence "(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most efficient manner."

The Court begins by noting that, given her diminished mental capacity, the factors of specific deterrence, protection of the public from further crimes of the defendant, and educational or vocational training are not relevant to the instant analysis.

The other factors, however, counsel against granting of the motion. Here, the nature and circumstances of the offense are heinous. This was not a crime of passion but a cold-blooded murder. Baker orchestrated a murder for hire to prevent discovery of years-long Medicaid fraud. Undeterred by the refusal of her former boyfriend Davis to commit the murder for her, she then approached her son. She involved her family members in the murder and the attempts to cover-up the murder. She was intimately involved not only with the victim, Dr. Hodge, but with his family. As the Government notes, Baker was accepted as a member of his

family; she ate with them and she vacationed with them. (*See* Exs. 1-4 to Gov't's July 14, 2021 Ltr. (DE 381).) Yet she did not hesitate to take Dr. Hodge from his children and his extended family to prevent discovery of her criminal fraud. Reducing Baker's sentence would not reflect the seriousness of the offense. *Cf. United States v. Marmolejos*, 2021 WL 3862851 (S.D.N.Y. Aug. 30, 2021) (Chen, J., sitting by designation in the S.D.N.Y.) (denying reduction to life sentence where offense was murder-for hire, not a crime of passion, as it would not reflect the seriousness of the offense). The need to provide just punishment for the offense also counsels against granting the application; it would result in reducing Baker's sentence by more than one-third and be contrary to the aims of the original sentence. It is appropriate for the Court to consider how a reduction in sentence would undermine the aims of the Court's original sentence. *See United States v. Roney*, 833 F. App'x 850, 853-54 (2d Cir. 2020). To paraphrase what the Court stated in its denial of Baker's 2020 request for a reduction: On resentencing, even though it was no longer bound by the statutory minimum sentence of life imprisonment on Count Two, the Court still determined that a sentence of 45 years was appropriate and reasonable despite the knowledge that then 63 year old defendant would be incarcerated effectively for the rest of her life.

General deterrence also weighs in favor of denial. Those who commit murder for hire should be aware that they may well be required to serve the entirety of their sentence.

The Court recognizes that reductions in sentence have been granted to defendants who have dementia and even to some defendants who have committed serious crimes, such as murder. *See, e.g., United States v. Miller*, 690 F. Supp. 1578, 1579-80 (E.D. Mich. 1988) (dementia); *United States v. Lochmiller*, 473 F. Supp. 3d 1245, 1249 (D. Colo. 2020) (dementia). But this Court is not bound by those decisions. The First Step Act does not mandate a reduction even where the statutory grounds have been met. Rather, it provides that in such a case a court "may" grant a reduction. And while the seriousness of the offense does not automatically exclude a defendant from consideration for a reduction in sentence, it can be a grounds for denial. *See United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL2097653 (S.D.N.Y. May 1, 2020) (denying compassionate release due to the unprecedented nature and circumstances of defendant's fraud); *see also United States v. Shakur*, 498 F. Supp. 3d 490, 494-95 (S.D.N.Y. 2020) (holding that a reduction in sentence without consideration of the 3553(a) factors would be an abuse of discretion and those factors may preclude reduction of a particular defendant's sentence); *cf. Brooker*, 976 F.3d at 237 ("[A] district court's discretion [on motion for sentence reduction] - as in all sentencing matters - is broad."); *United States v. Ferranti*, 2021 WL 768233 (E.D.N.Y. Feb. 25, 2021) (noting that the importance of general deterrence does not diminish over time).

In orchestrating the murder of Dr. Hodge to prevent the discovery of her nearly decade long fraud, Baker denied him the opportunity to grow old surrounded by his family and friends and caused endless grief to the members of his family.

Although not opposing the current application, Dr. Hodge's eldest daughter wrote about how she missed her father's presence, how the world was denied his Renaissance spirit, and how he was never able to witness the accomplishments of her and her siblings. (*See E*x. 4 to Gov't's July 14, 2021 Ltr.) To use the language of Judge Haight, "It is difficult to imagine how 'the nature and circumstances of the offense' and the 'history and characteristics' of [Baker] when [s]he committed it could argue more strongly against a reduction in the sentence the Court imposed: a sentence that reflected then, and reflects now, 'the seriousness of the offense' and the need 'to provide just punishment for the offense.'" *Shakur*, 498 F. Supp. 3d at 500.

## CONCLUSION

For the foregoing reasons, Defendant's application for a reduction in sentence is denied.

**SO ORDERED.**

Dated: Central Islip, New York      s/ Denis R. Hurley
     September 7, 2021           Denis R. Hurley
                                              United States District Judge